UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS BURKETT, derivatively on behalf of SATCON TECHNOLOGY CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES S. RHOADES, JOHN M. CARROLL, PHILIP J. DEUTCH, DANIEL R. DWIGHT, JAMES L. KIRTLEY, JR., DAVID J. PREND, AND ROBERT G. SCHOENBERGER, <br><br><br><br> Defendants, <br><br> and <br><br> SATCON TECHNOLOGY CORPORATION, <br><br> Nominal Defendant. | Civil Action No. <u>11-11379</u> <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Thomas Burkett, by and through his undersigned attorneys, brings this action derivatively on behalf of Nominal Defendant Satcon Technology Corporation ("Satcon" or the "Company") and hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") against certain current and/or former members of its Board of Directors (the "Board") seeking to remedy Defendants' breaches of fiduciary duties and unjust enrichment from March 4, 2010 to July 5, 2011 (the "Relevant Period"). Plaintiff alleges upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief

1

based upon his attorneys' investigation, which included, but was not limited to a review of United States Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available information regarding the Company, as follows:

## I.   NATURE OF THE ACTION

1.      Satcon provides clean energy technology and utility grade power solutions for the renewable and distributed energy markets.   The Company provides businesses and utility companies with power conversion solutions and system design services for converting renewable energy sources into electrical power.   In addition, Satcon provides system design services and solutions for management, monitoring, and performance measurement.   Its two core product offerings are micro grid solutions and utility grade inverters for solar photovoltaic (PV) and fuel cell applications.   In 2009, Satcon unveiled a new product, its complete power harvesting and management solution for utility scale power plants, called Satcon Solstice.

2.      Throughout the Relevant Period, Defendants made materially false and misleading statements concerning Satcon's operations, finances, financial condition, and present and future business prospects.   These false and misleading statements were made by or on behalf of members of the Company's Board of Directors, who, due to their positions within Satcon, had access to adverse information about the Company that was both material and non-public. Despite this, the Individual Defendants allowed themselves and their fellow directors to disregard such adverse facts, and instead presented false and overly optimistic forecasts of the Company's future that were then publicly disseminated to shareholders through the Company's SEC filings and press releases.   As a result of Defendants' materially misleading statements and failures to disclose material facts regarding the Company's current and projected business

2

outlook, Satcon's common stock was caused to trade at artificially inflated prices during the Relevant Period, with its share price peaking at $5.49 on January 18, 2011.

3.      On February 22, 2011, Defendants initiated the first of a series of disclosures that would slowly reveal some of the issues and challenges negatively affecting the Company's current and future financial prospects.  In a press release issued that day and filed with the SEC, Satcon announced its financial results for the fourth quarter and year-end of 2010.  Despite record highs in terms of revenues, Defendant Rhoades briefly alluded to some of the Company's percolating problems in revealing that revenues would be down in the first half of 2011 due to "some seasonal effect coming from the European region and the North American commercial rooftop business."  In response to the news, the price of Satcon fell nearly 30%, closing at $3.54 per share on a day marked by heavy trading volume.

4.      On April 7, 2011, Satcon announced its preliminary financial results for the first quarter of 2011.  Defendant Rhoades stated that revenues were expected to fall below the forecasted range, and, by way of explanation for the unmet previously announced targets, stated that customers had been delaying delivery of the Company's inverter systems for later in the year and also cited delays in the Company's construction projects.  In reaction to this news, Satcon stock price fell $0.23 cents per share and closed at $3.29 per share.

5.      On April 27, 2011, Satcon issued a press release announcing its financial results for the first quarter of 2011.  The Company expanded slightly upon the scope of its European problems, in citing below expectation levels of business in Europe due to changes and uncertainty in renewable energy policies for several European Countries.  Upon dissemination of this news, stock price fell $0.19 per share, closing at $3.00 per share.

6.     Satcon announced its preliminary financial results for the second quarter of 2011 on July 5, 2011, and this time Company CEO and Defendant Rhoades' disclosed a bit more than had previously been stated in terms of the Company's continuing difficulties.   Rhoades confirmed that Satcon would be "narrow[ing]" its revenue guidance, with revenues as well as gross margin expected to fall below previous guidance, and he once again acknowledged delays in construction projects and ongoing changes in government incentives in Europe with regard to solar energy.   Finally, the Company also revealed a workforce reduction of 15%.   In reaction to this news, Satcon stock price dropped 23% on heavy trading volume, closing at $1.95 per share.

7.     While Defendants, due to their positions as directors of the Company, had access to non-public material information regarding the Company's sales figures, projections, inventory, and market conditions in specific regions covered by the Company, Defendants concealed these harsh truths from the investing public during the Relevant Period, and allowed the Company to issue materially false and misleading statements regarding the Company's business practices and financial condition, all while lacking a sufficient basis for the positive statements and optimistic outlooks they disseminated all the while to Satcon's shareholders and the investing public at large.

8.     Defendants harmed the Company by causing it to issue materially false and misleading statements, resulting in a loss of significant Company value and exposure to federal securities law violations.   Indeed, as a result of Defendants' wrongful acts and omissions, the Company is now exposed to millions of dollars in defense costs and potential liability as a result of securities class action litigation filed against the Company.

9.     As a result, Plaintiff seeks to recover damages suffered, and to be suffered, by the Company as a result of the wrongful acts of its directors as described herein.

## II.   <u>JURISDICTION AND VENUE</u>

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this district because nominal defendant Satcon maintains its principal executive offices in the District.

## III.   <u>PARTIES</u>

12.     Plaintiff Burkett is a current shareholder of Satcon and has continuously held Satcon stock at all relevant times. Plaintiff is a citizen of the State of Florida.

13.     Nominal defendant Satcon is a corporation organized and existing under the laws of Delaware.  Satcon has its principle executive offices located at 25 Drydock Avenue, 7th Floor, Boston, Massachusetts 02210.

14.     Defendant Charles S. Rhoades ("Rhoades") is, and at all relevant times was, Chief Executive Officer ("CEO"), President, and a Class III director of Satcon.  He has been a director of the Company since 2008.  Rhoades is a resident of Massachusetts.

15.     Defendant John M. Carroll ("Carroll") is a Class I director of Satcon and Chairman of the Board's Audit Committee.  He has been a director of the Company since May 2005, and he became Chairman of Satcon's Board in October 2006.  Carroll is a resident of Massachusetts.

16.     Defendant Philip J. Deutch ("Deutch") is a Class II director of Satcon.  He has been a director of the Company since November 2007.  Deutch is a resident of Massachusetts.

17.     Defendant Daniel R. Dwight ("Dwight") is a Class III director of Satcon, and he is also a member of the Board's Audit Committee.  He has been a director of the Company since 2006.   Dwight is a resident of Massachusetts.

18.     Defendant James L. Kirtley, Jr. ("Kirtley") is, and has been a Class I director since 1992.  Kirtley is a resident of Massachusetts.

19.     Defendant David J. Prend ("Prend") is a Class III director of Satcon.  He has been a director of the Company since November 2007.  Prend is a resident of Massachusetts.

20.     Defendant Robert G. Schoenberger ("Schoenberger") is a Class II director of Satcon and a member of the Board's Audit Committee.  He has been a director of the Company since December 2007.  Schoenberger is a resident of Massachusetts.

21.     The Defendants identified in paragraphs 14-20 are sometimes referred to collectively herein as the "Individual Defendants".  The Individual Defendants and Satcon are collectively referred to herein as the "Defendants."

## IV.   FURTHER SUBSTANTIVE ALLEGATIONS

### A.   Background

22.     Satcon is a power conversion equipment manufacturer based in Boston, Massachusetts.  It provides utility-grade power conversion solutions for the renewable energy market, delivering its services and products to customers around the world, including North America, Asia, and Europe.  It designs and delivers advanced power conversion products that enable large-scale producers of renewable energy to convert the clean energy they produce into grid-connected, efficient, and reliable power.

23.     As directors of Satcon, the Individual Defendants, Rhoades, Carroll, Deutch, Dwight, Kirtley, Prend, and Schoenberger, owed and owe to Satcon specific fiduciary

obligations.  These fiduciary duties include candor, good faith, fair dealing, loyalty and due care.  Their roles as directors of Satcon also require them to make reasonable inquiry, to maintain oversight and supervision of the Company, and to execute their fiduciary duties in good faith.

24.     At all times during the Relevant Period, the Individual Defendants had access to non-public information regarding Satcon's business, finances, products, markets, and present and future business projects.  They were privy to this information by nature of their role within the Company as members of the Board, and acquired such non-public intelligence through internal corporate documents, conversations among the directors themselves and with corporate officers and employees, attendance at management meetings and meetings of the Board, and through reports and other information provided to them in connection with their role as directors of Satcon.

25.     Satcon's directors breached their fiduciary duties as detailed herein.  Despite their possession of non-public materially adverse information relating to the Company, the Individual Defendants recklessly disregarded the fact that the adverse material facts as stated herein had not been disclosed to, and were actually being concealed from, the investing public.  Such concealment and failures to disclose, together with the material misrepresentations and materially false public statements on the part of Defendants, caused Satcon's stock price to trade at artificially high levels prior to the slow trickle of disclosures ultimately announced by Defendants over the course of various press releases beginning on February 22, 2011.

**B.     Materially False and Misleading Statements
         Issued During the Relevant Period**

26.     On March 4, 2010, the Company issued, and filed with the SEC, a press release announcing its financial results for the fourth quarter and full year-end of 2009 for the period ending December 31, 2009.  Satcon reported $21.5 million in revenues and $7.4 million in net

losses attributable to common shareholders.  Satcon's CEO, Defendant Rhoades, reported that he was "very pleased" with the Company's fourth quarter performance, which he said "marked the strongest period for sales of our renewable energy solutions in Satcon's history."  He further stated that Satcon "remained on track" with its strategic plan to expand into Europe and Asia.  In terms of guidance for the first quarter of 2010, Defendant Rhoades forecasted revenues of $14 to $16 million, and a significant increase in sales of inverters, commenting further as follows:

> Our solid backlog and pipeline in the early part of this year are ***indicative of a strong 2010 for Satcon***. Our dedication to product innovation and expanding our global capacity, coupled with efforts to lower our overall manufacturing costs**, *position us well for growth and profitability during the year***.

> For the first quarter of 2010, we are introducing ***top-line guidance of $14 to $16 million***. Despite expecting lower sequential results over Q4 due to typical seasonality in the industry, we anticipate Q1 sales of our PV inverter solutions to double over the same period last year. Gross margin will also continue to improve over 2009 levels as we increase sales volumes and transition our manufacturing to our lower-cost facility in China.  [Emphasis added.]

27.     The above statements and financial results in the March 4, 2010 press release were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were wrongfully disregarded by them, including, that the Company:  (1) was experiencing a decrease in sales of its inverter systems; (2) was struggling with an underperforming European market due to changes in government incentives for solar energy; and (3) failed to properly account for its inventory.  As a result of the aforementioned, Defendants lacked a sufficient basis for their positive statements and optimistic outlooks regarding the Company's prospects, and the Company's statements were materially false and misleading at all relevant times.

28.     On May 6, 2010, the Company issued, and filed with the SEC, a press release announcing its financial results for the first quarter of 2010, for the period ending March 31,

2010.   Satcon reported $14.7 million in revenues and $7.2 million in net loss attributable to

common shareholders.   Satcon's CEO, Defendant Rhoades, reported that he was again "very

pleased" with the Company's first quarter performance, which "continued to build on the strong

growth momentum of 2009 and further strengthened our position as the world leader in utility

grade power conversion system solutions."   He further stated that Satcon was "well positioned to

deliver significant top line growth in 2010," and attributed the growth of the Company's backlog

to, among other things, a "significant increase in orders through our expanded presence in both

China and Europe."   In terms of guidance for the second quarter of 2010, Defendant Rhoades

forecasted that revenues would also "increase significantly" to between $25 and $28 million,

along with an increase in gross margins to over 20%, with further margin expansion to over 30%

in the second half of 2010.   These statements were materially false and misleading when made

for the reasons set forth in paragraph 27.

29.     On August 5, 2010, the Company issued, and filed with the SEC, a press release

announcing its financial results for the second quarter of 2010, for the period ending June 30,

2010.   Satcon reported $27.6 million in revenues and $8.5 million in net loss attributable to

common shareholders.   Satcon's CEO, Defendant Rhoades, reported in relevant part, as follows:

> Second quarter sales of $27.6 million represented the largest quarter in Satcon's history,
> reaching revenues over two and a half times greater than what we reported in the same
> period a year ago. We also grew gross margin to 21%, a significant improvement over
> last quarter's 14%, fueled by the transfer of our primary manufacturing to our lower cost
> facility in Shenzhen, China, which we completed during the second quarter.

30.     He further commented on the strength of Satcon's backlog and bookings activity,

and noted that the Company would be growing its current capacity significantly in the second

half of the year and beyond.   In terms of guidance for the third quarter of 2010, Defendant

Rhoades forecasted revenues between $43 and $47 million and gross margin greater than 30%, stating further as follows:

> [W]e remain on target to have our operations plan fully implemented by the end of Q3. With these improvements, we expect that our margins in the third quarter will be in the mid to high 20's, and margins for the fourth quarter will be in the low to mid 30% range.
>
> We see momentum continuing into our fourth quarter of 2010, and expect that our fourth quarter revenues will increase over those that we generate in our third quarter.

These statements were materially false and misleading when made for the reasons set forth in paragraph 27.

31.     On October 18, 2010, the Company issued a press release announcing its preliminary financial results for the third quarter of 2010, for the period ending September 30, 2010.  Satcon reported an expected $56 to $58 million in revenues and an anticipated positive operating income for third quarter 2010.  Satcon also noted that its bookings recorded during the third quarter of 2010 were approximately $78 million, and, as a result, "Satcon's bookings through September 30, 2010 total over $200 million, an increase of 465% over bookings during the same nine-month period last year."  Satcon also revealed a plan to sell shares of its common stock in an underwritten public offering.  Finally, Defendants announced expected revenues for fourth quarter 2010 to be "in the range of $70 million to $75 million" along with a gross margin percentage between 28% and 32%.  These statements were materially false and misleading when made for the reasons set forth in paragraph 27.

32.     On October 22, 2010, the Company issued a press release announcing that on October 21, 2010, Satcon priced a public offering of 9,000,000 shares of its common stock at a public offering price of $3.90 per share.  Satcon stated that it expected to raise $32.7 million in net proceeds pursuant to this offering, after deducting underwriting discounts and commissions and other offering expenses.  The Company stated that it anticipated using the net proceeds from

the offering for working capital and other general corporate purposes, such as research and development, capital expenditures, and possibly acquisitions of other business entities, products, or technologies. The underwriter of the public offering was granted an option to purchase up to 1,350,000 additional shares of Satcon's common stock to cover overallotments, if any. The Company issued a registration statement with the SEC (the "Registration Statement") in connection with the offering, with the Registration Statement incorporating a prospectus. The Registration Statement failed to disclose material adverse facts about Satcon and its business, and was materially false and misleading for the reasons set forth in paragraph 27.

33.     On October 27, 2010, the Company issued a press release announcing its completion of the public offering, in which 1,350,000 shares were issued pursuant to the underwriter's overallotment option, which was exercised in full. As anticipated, the shares were issued to the public at a price of $3.90 per share, and net proceeds to Satcon from sale of the shares were approximately $37.5 million.

34.     On October 28, 2010, the Company issued, and filed with the SEC, a press release announcing its financial results for the third quarter of 2010, for the period ending September 30, 2010. Satcon reported $58.4 million in revenues and $1.6 million in net loss attributable to common shareholders. Defendant Rhoades, commented on the results as follows:

> Satcon posted another record quarter with sales reaching $58.4 million, representing over 480% growth from what we reported in the same period a year ago, and exceeding our preliminary revenue projection of $56 million to $58 million. We also grew gross margin to 27%, which was in line with our guidance and ahead of last quarter's gross margin of 21%.
>
> ***Given the continued strength of the utility scale market, coupled with our robust revenue growth and current backlog and pipeline, we continue to believe that we will acquire 20 percent of the global market for PV inverters at 250 kilowatt and above in 2011.*** [Emphasis added.]

In terms of guidance for the fourth quarter of 2010, Rhoades forecasted as follows:

*By concentrating our efforts on next-generation technologies, coupled with the expansion of our international sales and service, and manufacturing footprint, we are positioning Satcon for long-term growth and with a clear differentiation from our current and future competitors.* As we look to the remainder of 2010, we expect our fourth quarter revenues will increase significantly to between $70 million and $75 million and our gross margin percentage to be between 28% and 32%. *On the strength of our bookings pipeline and diversification of our geographic presence, we do not expect revenues in the first quarter of 2011 to be affected by the seasonality we've experienced in recent years.* [Emphasis added.]

These statements were materially false and misleading when made for the reasons set forth in paragraph 27.

35.     The statements referenced in paragraphs 29-33 above were all materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which Defendants wrongfully disregarded, including that the Company: (1) was experiencing a decrease in sales of its inverter systems; (2) was struggling with an underperforming European market due to changes in government incentives for solar energy; and (3) failed to account properly for its inventory. As a result of the aforementioned, Defendants lacked sufficient basis for their positive statements and optimistic outlooks regarding the Company's prospects, and the Company's statements were materially false and misleading at all relevant times.

### C.     Satcon Begins to Reveal Material Adverse Conditions and Situations Affecting the Company's Financial Condition and Future Business Prospects

36.     On February 22, 2011, Satcon made the first of its disclosures regarding the challenges facing its business that had been percolating for some time prior. On this day, the Company issued, and filed with the SEC, a press release announcing its financial results for the fourth quarter of 2010 and year-end 2010, for the period ending December 31, 2010. Satcon reported $72.6 million in revenues and an operating income of $3.5 million. Defendant Rhoades noted that "2010 marked a record year for Satcon, with quarter-end and full-year sales meeting

our top-line guidance, and each growing over three times the amount of sales we reported in the same periods a year ago." He added that gross margin had improved in each quarter as well, and that the Company had posted an operating profit for the last two consecutive quarters of the year. In terms of guidance for 2011, Rhoades commented as follows:

> We continue to see significant ongoing market opportunity presented to us by the breadth and reputation of our utility scale solutions, with additional revenue potential coming from design, configuration, and other after-market programs that we have introduced and that are in our pipeline. ***Looking at the first half of 2011, we expect to see some seasonal effect coming from the European region and the North American commercial rooftop business. However, we expect this slowdown to be offset by strong sales into the North American utility-scale market, and orders from our Chinese partnerships***.

> With a mix shift of sales from Europe to Asia, where ASP's tend to trend lower, coupled with a higher proportion of our sales coming from our newest technology, including the Solstice 500kW solution, which is not yet fully transferred to our high volume Asian manufacturing facility and Asian sources, we expect Q1 revenues to be in the range of $65 to $70 million with our gross margin between 25% to 27***%. As we look out to Q2, we expect a significant increase in volume from Europe and North America, and increased gross margin on improvements in our supply chain and greater utilization of our Asian manufacturing facilities. We expect to continue our run of operating profitability throughout the year***. [Emphasis added.]

37.     Following this announcement, the price of Satcon fell $1.29 per share, or 27%, to close at $3.54 per share on heavy trading volume. Despite the revelations contained within Rhoades comments, the full scope of Satcon's problems continued to be concealed by Defendants.

38.     On April 7, 2011, Satcon announced its preliminary financial results for the first quarter of 2011, for the period ending March 31, 2011. Satcon reported an expected $61 to $63 million, below the forecasted range of $65 to $70 million, as well as gross margins between 23% to 25%, also below the forecasted range of 25% to 27%. Defendant Rhoades noted the following:

> *While we are pleased our quarterly revenue has grown year over year, our Q1 2011 revenue reflects delays in construction projects.* We continue to see significant year over year growth as a result of our diversified geographic strategy. *We expect the global environment to improve as we head into the peak construction season.* When combined with demand trends in the US and Canada, as well as emerging new global markets, *we continue to anticipate significant worldwide growth in 2011.* [Emphasis added.]

Rhoades stated that such below-target preliminary results were due to customers delaying the delivery of inverter systems initially targeted for March to later in the year, as well as construction project delays.

39.     Following this announcement, Satcon's stock price fell $0.23 per share, a 7% drop, closing at $3.29 per share.

40.     On April 27, 2011, the Company issued, and filed with the SEC, a press release announcing its financial results for the first quarter of 2011, for the period ending March 31, 2011.  Satcon reported $62 million in revenues and $1.5 million in net operating loss.  Defendant Rhoades once again stressed the positive aspects of the business, noting that Satcon's first quarter performance "reflected continued demand for our utility scale solar PV systems in North American and Asia," but he also muted the positivity somewhat in conceding that "[a]t the same time, our European business was weaker than we expected due to the uncertainty around government policies for renewable energy in several European countries."  In terms of guidance for the second quarter of 2011, Rhoades noted that the Company "expect[ed] Q2 revenue to be in the range of $50 to $60 million" – up to $10 million lower than the previous quarter's revenues.

41.     Following this announcement, Satcon's stock price dropped $0.19 per share, or 6%, closing at $3.00 per share.

42.     On July 5, 2011, the Company issued a press release announcing its preliminary financial results for the second quarter of 2011, for the period ending June 30, 2011.  Satcon reported expected revenues of between $45 and $47 million, and gross margin between 7% and

11% -- both the revenue and gross margin forecasts fell below the Company's previous guidance announced for this quarter.  Satcon once again stressed the positive aspects of the business, noting that Satcon's second quarter performance included the achievement of "important milestones on our path to long term margin expansion and profitability," but once again conceded that the Company faced serious issues, in stating that "changes in government incentives in the Company's higher margin markets in Europe as well as delays on a few projects that have been pushed into the third quarter" were responsible for the below average financial results for Satcon.

43.     Following this announcement, Satcon's stock fell $0.59 per share, 23%, closing at $1.95 on heavy trading volume.

44.     Defendants' materially misleading statements, omissions, and other wrongful conduct have caused Satcon stock to fall precipitously, with a 60% drop in stock price from Satcon's initial disclosure on February 22, 2011, through the last disclosure made on July 5, 2011 relating to defendants' adverse material information.

45.     As a result of Defendants' breaches of fiduciary duty and other misconduct, the price of the Company's stock has still not recovered.

46.     Accordingly, Satcon has been damaged.

47.     Moreover, as a result of the Individual Defendants' misconduct, the Company is now the subject of class action litigation alleging violation of the federal securities laws, which necessitates the Company incurring wasteful costs and risks arising from the Individual Defendants' wrongful course of conduct.

## V.    DERIVATIVE ALLEGATIONS

48.    Plaintiff brings this action derivatively on behalf of and for the benefit of Satcon to redress injuries suffered, and to be suffered, by it as a direct and proximate result of the breaches of fiduciary duties alleged herein.  The Company is a nominal defendant named solely in a derivative capacity.

49.    Plaintiff purchased shares of Satcon and continued to hold such shares at all times relevant and through the present.  Thus, Plaintiff was a Satcon shareholder during the wrongdoing complained of herein.

50.    Plaintiff will fairly and adequately represent the interests of the Company, and has retained competent counsel experienced in derivative litigation to enforce and prosecute this action.

51.    The wrongful acts complained of herein subject, and will persist in subjecting Satcon, to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing.

## VI.    THE FUTILITY OF DEMAND

52.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53.    At the time of the filing of this action, Satcon's Board of Directors is composed of seven (7) Directors.

54.    Each of these directors has been named as a defendant in this action and was a director during the time period when Satcon is alleged to have artificially inflated its stock price by issuing materially false and misleading statements in the Company's public filings and press releases.

16

55.     The Individual Defendants owed a duty to Satcon and its shareholders to be reasonably informed about business and operations of the Company.  The Individual Defendants completely abdicated their oversight duties to the Company by failing to implement internal procedures and controls necessary to prevent the wrongdoing alleged herein.

56.     Plaintiff did not make a demand on the Company's Board prior to instituting this action because the wrongful acts complained of herein evidence a pattern of conduct showing a wholesale abandonment of their fiduciary duties, including the duty to exercise oversight, due care, and diligence.  Demand is excused because the Board has exhibited antipathy towards investigating or prosecuting corporate wrongdoing, in that it has, to date, failed to take any action in this regard.

57.     These acts, which demonstrate a pattern of misconduct, were not, nor could they have been, the product of a valid or good faith exercise of business judgment.

58.     Demand is excused because the Board must have known of the Company's manipulative actions relating to the issuance of materially false and materially misleading information to the public by means of SEC filings and press releases.

59.     Accordingly, the Board cannot exercise independent objective judgment in deciding whether to bring this action because they are personally interested in the outcome of this lawsuit as it is their actions that have subjected Satcon to liability.

60.     Further, any suit by the Company to remedy these wrongs would likely expose the Individual Defendants and Satcon to further liability for violations of the federal securities laws, in that it no doubt would result in additional civil actions being filed against one or more of the Individual Defendants (and would further strengthen the existing civil litigation against the Individual Defendants); thus, they are hopelessly conflicted in making any supposedly

independent determination of whether the Company should sue themselves.  Thus far, at least two class action complaints for violations of the federal securities laws have been filed against the Company as a result of the wrongdoing set forth herein.  In particular, an action entitled *Edwards v. Satcon Tech. Corp., et al.* was filed in the United States District Court for the District of Massachusetts on July 19, 2011, and an action entitled *Ziegler v. Satcon Tech. Corp., et al.* was filed in the United States District Court for the District of Massachusetts on July 21, 2011.

61.     Satcon has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not a lawsuit against itself or others who were responsible for the wrongful conduct to attempt to recover for Satcon any part of the damages the Company suffered and will suffer thereby.

62.     If the current directors were to cause the Company to bring this action against themselves, they would thereby admit their own misconduct, which underlies allegations contained in the class action complaints for violations of federal securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Board.   Thus, the Board would be forced to take positions contrary to the defenses they will likely assert in the securities class action litigation.

63.     Despite the Board having knowledge of the facts underpinning the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for Satcon in connection with any of the wrongdoing alleged by Plaintiff herein.

64.     The conduct complained of herein could not have been the product of good faith business judgment, and each of the directors faces a substantial likelihood of liability for

breaching their fiduciary duties because, through their intentional misconduct, they have subjected Satcon to substantial damages.  Furthermore, the conduct of the Board has subjected the Company to substantial potential liability in connection with securities fraud class action litigation.  Through their misconduct, the Board has subjected the Company to a substantial risk of material costs, fines, and adverse judgments associated with the securities fraud class actions.  Such actions by the Board constitute waste and cannot be protected by the business judgment rule.  Accordingly, making a pre-suit demand on the Board would be futile.

## COUNT I

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY AND DISSEMINATING FALSE AND MISLEADING INFORMATION

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     As alleged in detail herein, each of the Individual Defendants, as Directors of the Company, had a duty to ensure that Satcon disseminated accurate, truthful and complete information to its shareholders.

67.     The Individual Defendants violated their fiduciary duties of candor, care, loyalty, and good faith by causing the Company to disseminate to its shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

68.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered substantial damages.

## COUNT II

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.     The Individual Defendants owed and owe to Satcon fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and continue to owe Satcon the highest obligations of good faith, fair dealing, loyalty and due care.

71.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

72.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Satcon has sustained substantial damages, not only monetarily, but also to its corporate image and goodwill.

73.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

74.     Plaintiff, on behalf of Satcon, has no adequate remedy at law.

## COUNT III

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL

75.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Satcon, for which they are legally responsible.  In particular, the Individual Defendants abused their positions of authority by causing or allowing Satcon to misrepresent material facts regarding its financial position and business prospects.

77.    As a direct and proximate result of the Individual Defendants' abuse of control, Satcon has sustained substantial damages.

78.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

79.    Plaintiff, on behalf of Satcon, has no adequate remedy at law.

## COUNT IV

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR GROSS MISMANAGEMENT

80.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.    The Individual Defendants had a duty to Satcon and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Satcon.

82.    The Individual Defendants, by their actions including the wrongdoing described herein, abandoned and abdicated their fiduciary responsibilities and duties with regard to prudently managing the businesses of Satcon in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their fiduciary duties of due care, diligence and candor in the management and administration of Satcon's affairs and in the use and preservation of Satcon's assets.

83.    During the course of the discharge of their duties, the Individual Defendants knew or wrongfully disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused  Satcon to engage in the scheme complained of herein, which they knew had an unreasonable risk of damage to Satcon, thus breaching their

duties to the Company.  As a result, Defendants grossly mismanaged Satcon, thereby causing the Company to suffer substantial damages.

## COUNT V

**AGAINST ALL INDIVIDUAL DEFENDANTS FOR WASTE OF CORPORATE ASSETS**

84.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85.     As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Satcon to incur (and likely to continue to incur) a significant risk of legal liability and legal costs to defend itself as a result of the Individual Defendants' wrongful actions.

86.     As a result of their waste of corporate assets, the Individual Defendants are liable to the Company.

87.     Plaintiff, on behalf of Satcon, has no adequate remedy at law.

## COUNT VI

**AGAINST ALL INDIVIDUAL DEFENDANTS FOR UNJUST ENRICHMENT**

1.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

2.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Satcon.

3.     Plaintiff, as a shareholder and representative of Satcon, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits,

benefits and other compensation obtained by these Defendants, and each of them, from or in the course of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

A.      Against all Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.      Directing Satcon to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.      Awarding to Satcon restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated: August 2, 2011

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
Matorin Law Office, LLC
200 Highland Avenue
Suite 306
Needham, MA 02494
T: (781) 453-0100
F: (888) 628-6746
E: mmatorin@matorinlaw.com


LEVI & KORSINSKY, LLP
Joseph Levi, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*

## **VERIFICATION**

I, Thomas Burket, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing compliant, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: August 1st, 2011

Thomas Burket